## VANDEGRIFT & CO. *v.* UNITED STATES (No. 843).[1]

1. SUBSECTION 22, SECTION 28, TARIFF ACT OF 1909.

Subsection 22 of section 28 makes express provision for an allowance in the estimation and liquidation of duties upon fruit, when by reason of decay, destruction, or injury during transportation there is a shortage or in fact a nonimportation thereof, its commercial value being destroyed.

2. PROOF OF NONIMPORTATION, BEFORE WHOM.

The Secretary of the Treasury is empowered to make regulations relative to shortage or nonimportation of merchandise, but the law itself requires that "proof to ascertain such destruction or nonimportation shall be lodged with the collector of customs * * * within 10 days after the landing of the merchandise." A regulation intended to exclude from the consideration of a collector proof that had been so duly filed would be invalid.

3. CASE HERE.

The importer here duly filed his proof and it will be presumed the collector made his decision in the light of it. The board on review affirmed that decision; it will not now be disturbed.

### United States Court of Customs Appeals, April 22, 1912.

APPEAL from Board of United States General Appraisers, G. A. 7316 (T. D. 32148).

[Affirmed.]

*Brown & Gerry* for appellants.

*William L. Wemple*, Assistant Attorney General (*William A. Robertson*, special attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

This appeal involves the interpretation of subsection 22 of section 28 of the tariff act of August 5, 1909, and of the regulations of the Secretary of the Treasury made under the authority thereof.

Said subsection is as follows: .

SEC. 22. No allowance shall be made in the estimation and liquidation of duties for shortage or nonimportation caused by decay, destruction or injury to fruit or other perishable articles imported into the United States whereby their commercial value has been destroyed, unless under regulations prescribed by the Secretary of the Treasury. Proof to ascertain such destruction or nonimportation shall be lodged with the collector of customs of the port where such merchandise has been landed, or the person acting as such, within ten days after the landing of such merchandise. The provisions hereof shall apply whether or not the merchandise has been entered, and whether or not the duties have been paid or secured to be paid, and whether or not a permit of delivery has been granted to the owner or consignee. Nor shall any allowance be made for damage, but the importers may within ten days after entry

---

[1] Reported in T. D. 32470 (22 Treas. Dec., 759).

abandon to the United States all or any portion of goods, wares or merchandise of every description included in any invoice and be relieved from the payment of duties on the portion so abandoned: *Provided,* That the portion so abandoned shall amount to ten per centum or more of the total value or quantity of the invoice. The right of abandonment herein provided for may be exercised whether the goods, wares or merchandise have been damaged or not, or whether or not the same have any commercial value: *Provided, further,* That section twenty-eight hundred and ninety-nine of the Revised Statutes, relating to the return of packages unopened for appraisement, shall in no wise prohibit the right of importers to make all needful examinations to determine whether the right to abandon accrues, or whether by reason of total destruction there is a nonimportation in whole or in part. All merchandise abandoned to the Government by the importers shall be delivered by the importers thereof at such place within the port of arrival as the chief officer of customs may direct, and on the failure of the importers to comply with the direction of the collector or the chief officer of customs, as the case may be, the abandoned merchandise shall be disposed of by the customs authorities under such regulations as the Secretary of the Treasury may prescribe, at the expense of such importers. Where imported fruit or perishable goods have been condemned at the port of original entry within ten days after landing, by health officers or other legally constituted authorities, the importers or their agents shall, within twenty-four hours after such condemnation, lodge with the collector, or the person acting as collector, of said port, notice thereof in writing, together with an invoice description and the quantity of the articles condemned, their location, and the name of the vessel in which imported. Upon receipt of said notice the collector, or person acting as collector, shall at once cause an investigation and a report to be made in writing by at least two customs officers touching the identity and quantity of fruit or perishable goods condemned, and unless proof to ascertain the shortage or nonimportation of fruit or perishable goods shall have been lodged as herein required, or if the importer or his agent fails to notify the collector of such condemnation proceedings as herein provided, proof of such shortage or nonimportation shall not be deemed established and no allowance shall be made in the liquidation of duties chargeable thereon.

The applicable regulations of the Secretary of the Treasury are as follows (T. D. 30023):

In order to obtain an allowance on account of shortage or nonimportation caused by decay, destruction, or injury to imported fruit, under the said provisions of law, the importers shall, within 48 hours after the arrival of the importing vessel, give notice in writing to the collector of customs of their intention to claim such allowance, which notice shall be in the following form:

\*    \*    \*    \*    \*    \*    \*    \*

Upon receipt of such notice, the collector will at once direct the appraiser to detail one or more examiners to make an examination of such fruit to determine the percentage of decay therein. Such examiner shall proceed promptly to select and set aside representative packages consisting of at least 5 per cent of each lot or mark, and will open and examine the same to determine the percentage of decay in the fruit contained therein. The appraiser shall make a return of such examination to the collector within 10 days after the landing of the merchandise, specifying the number of packages examined, the marks and numbers thereof, and the percentage of rotten and worthless fruit contained therein. The percentage of rotten and worthless fruit returned by the appraiser as found in the packages so examined shall be considered as the percentage of such fruit contained in the entire importation, and an allowance will be made accordingly in the liquidation of the entry.

The merchandise was lemons. The importers, within the time provided by the above regulations and concededly in compliance

therewith, gave notice in writing to the collector of customs of their intention to claim an allowance because of decay in the fruit.   Later, but within the 10 days limited therefor by the statute, they filed with the collector an affidavit in which in substance it was set forth that the affiant, who was in the importers' employ, had examined at least 10 per cent of the fruit in the usual commercial manner, and that therefrom he was convinced that varying percentages of the importations were rotten and worthless, which percentages were embodied in the affidavit.

What action if any was in fact taken by the customs officers touching an examination of the fruit as a result of or subsequent to the above-mentioned notice the record does not show, but inasmuch as no claim of a shortage of duty in that behalf is here made by the importers, it will be presumed that the regulations as to the examination to be made of the importation upon receipt of said notice were complied with.

The appraiser reported to the collector the percentage of the fruit which he considered rotten and worthless.   The collector thereupon assessed duty upon the merchandise, and again we are forced to presume, and for the same reason as last above stated, that his assessment was based either upon the percentage of rot found by the appraiser, or, at least, upon a percentage higher than that set forth in the affidavit filed by the importers, as above mentioned.

The importers protested the assessment and, when the case came on for hearing before the board, sought to introduce evidence tending to show that the percentage of rot in the importations was in fact as stated in said affidavit.   The Government objected to this evidence and the same was excluded by the board, to which exception was taken by the importers, who bring the case here for review.

The Board of General Appraisers in its decision states that the provision of subsection 22, that proof to ascertain the decay shall be lodged with the collector within 10 days after the landing of the merchandise, had not been complied with.   Whether it overlooked the affidavit before mentioned, or did not consider it to be proof within the meaning of the statute does not appear.   It is, however, conceded here that such proof, by way of said affidavit, was seasonably filed pursuant to the statute.

The board held that the importers were not entitled to produce new evidence tending to establish the amount of decay in the importations, and that it was without authority to receive or consider the same.

It does not appear that the board did in fact consider or that it was asked to consider the evidence which was before the collector, namely, the affidavit and the appraiser's return.

The only question decided by the board was that, there being no proof filed with the collector on behalf of the importers and the board

being without authority to hear additional testimony, there was no evidence to sustain the protest.

Two members of the board were of opinion that under this assumed state of facts the protest should be overruled, and one member was of opinion that the return of the appraiser ·as to the percentage of rot was conclusive on the issue and that the protest should be dismissed for want of jurisdiction.    The judgment was that the protest be overruled and the decision of the collector affirmed.

It being conceded by the Government that said affidavit was "proof" within the act, it remains to consider only one question. The same is stated by the Government as follows:

The new law (subsec. 22) makes special provision for the settlement of claims for shortage or nonimportation of fruit.   It requires that "proof to ascertain such destruction or nonimportation shall be lodged with the collector within ten days after the landing of the merchandise."   This legislation is exclusive, and does not allow of other proof to be lodged somewhere else at some other time.

And by the importers:

When the requirements of subsection 22 and of the departmental regulations·have been complied with and an allowance on account of rot has been made by the collector, if the importer is dissatisfied with the allowance made and files protest against the assessment, the amount of rot existing in the fruit at the time of importation is to be determined by the Board of Appraisers, like any other question of fact, upon the evidence before it.

Without exhaustively reviewing the same, we refer briefly to conditions existing prior to the enactment of said subsection.

As we stated in substance in United States *v.* Shallus (2 Ct. Cust. Appls., 332; T. D. 32074), the question of the allowance to be made in determining the duties upon fruit which had decayed in transportation was one which had been the subject of many controversies and to which much attention had been given by the courts and Congress extending over a long period of time.    Prior to the enactment of subsection 22 it is manifest that the law was in an unsatisfactory condition.    It was then provided (see sec. 23 of the customs administrative act of 1890) that·no allowance.for damage to imported goods should thereafter be made in the estimation and liquidation of duties, but abandonment was permitted if the portion abandoned amounted to 10 per cent of the total value or quantity of the invoice.

It is claimed by the Government that from the date of the enactment of this law until the decision of the Supreme Court in Lawder *v.* Stone (187 U. S., 281), decided in 1902, allowances for decay in imported fruit either were not made or were made only in cases of abandonment under the provisions of that law.

In the last-mentioned case, the Supreme Court held that where the fruit had become so decayed as to be worthless the importer was entitled to an allowance therefor without making an abandonment,

on the ground that there was a nonimportation or shortage. It seems that thereafter there ensued a large amount of litigation upon this question of allowance for nonimportation of fruit by reason of alleged decay thereof during transportation.

Viewed in the light of the foregoing, it is apparent that Congress must have intended by enacting subsection 22 to make express provision for an allowance in the estimation and liquidation of duties upon fruit when by reason of decay, destruction, or injury during transportation there was a shortage therein or in fact a nonimportation thereof, as a result of which its commercial value was destroyed.

The arguments of both parties proceed upon this assumption.

It needs not the citation of authorities to support the proposition that it is within the authority of Congress to do this, and also to establish the tribunal to determine what allowance shall be so made, the time within which it shall be determined, and the method of its ascertainment.

Provision is made for all these. The regulations adapted to secure such allowance are to be made by the Secretary of the Treasury. He has performed his duty by prescribing that whenever an importer intends to claim such allowance he shall within 48 hours after the arrival of the importing vessel give notice that he so intends. This provision manifestly is both salutary and reasonable. The importer is thereby afforded time to investigate and decide whether or not the condition of the merchandise probably warrants the claim. After the notice, the Government and importer both have ample time for their representatives, working either separately or together, to inspect the merchandise and determine its condition, so that if agreement on the subject be not reached the results thereof properly proven can be returned to and filed with the collector.

Now, while Congress delegated to the Secretary the authority to make regulations upon the subject, it has seen fit to provide in plain language that "proof to ascertain such destruction or nonimportation shall be lodged with the collector of customs * * * within ten days after the landing of the merchandise."

We think this provision is indicative of two purposes. One to limit the time for inspection and examination of the merchandise and procuring proof or evidence as to the condition in the respects under inquiry by either party, and the other to constitute the collector the tribunal, of first instance at least, to determine upon such proof what allowance if any in the estimation or liquidation of duties shall be made for the statutory causes.

Common knowledge suggests that the time for procuring such evidence or proof should be short. If decay exists, it may make rapid progress. The condition of the fruit at the time it is imported is the essential question. The evidence should relate to that time as nearly

as may be, and the real interests of both parties when acting in good faith are conserved by a speedy determination of the question. While the statute does not explicitly state that the percentage of decay shall be determined in the first instance at least by the collector, we think it demands that interpretation. Proof is to be filed with him. The dutiable value of the merchandise, as if sound, is determined by the appraising officers as in other cases, and that value evidently is to be applied by the collector to the true quantity or amount of the importation which plainly is its nominal or gross amount diminished by the ascertained percentage which represents the part whose commercial value has been destroyed in the manner pointed out in the statute. From the fact that the proof on this subject is to be filed with him, that it is his province to estimate and liquidate duties, and also because it seems to us to be in harmony with an orderly course of procedure in the matter, we hold, as indicated, that the collector is the officer whose duty in the first instance at least it is to determine the percentage of rot or decay, when it is claimed as in this case.

In doing this, of course, it would be his duty to consider all the evidence or proof furnished by the importer upon the one hand and the Government on the other, and to give thereto such probative effect as under all the circumstances in his judgment it was entitled to receive.

If the quoted regulation of the Secretary of the Treasury was intended to prevent the collector from considering the proof duly filed by the importers and to require him to base his finding as to the percentage of rotten or worthless fruit upon the return made to him by the appraiser, to that extent we hold the regulation contrary to the intent of the statute under which it was promulgated, and invalid. The collector must be free to perform the duty cast upon him by the law.

What we have already said leads to the conclusion that the statute should be interpreted as requiring that all proof relating to the destruction or nonimportation, whether on behalf of the importer or the Government, must be filed with the collector within the 10 days therein provided. At the end of that time the door is closed to the taking of evidence, and both parties must stand or fall on the proof within that time submitted by them.

It follows from this that the Board of General Appraisers, although inadvertently assuming the importers had filed no proof when the fact was otherwise, nevertheless reached a right conclusion in rejecting the offered testimony not filed with the collector.

The determination of this question seems to decide this case.

It is not contended that on the proof or evidence which the collector had before him, and the parties here do not contend that the affidavit as well as the returns of the appraiser are not evidence, the collector's finding is unsupported or ought to be reversed.

All the importers ask for is that the case be reversed and remanded for the taking of testimony by the board as to the amount of rot existing in the importations.

The Government insists that there is no question here as to the right of the board to review the decision of the collector in this class of cases and asks that its decision be affirmed.

We are of opinion that such disposition of the case should be made, and the judgment of the Board of General Appraisers is therefore *affirmed*.