## HARRIS & Co. *et al.* v. UNITED STATES (No, 852).[1]

GRAPES IN BARRELS.

Subsection 22 of section 28, tariff act of 1909, was intended to provide and does provide for an allowance in the estimation and liquidation of duties upon fruit when, by reason of decay, destruction, or injury during transportation, a shortage occurs, resulting, in fact, in a nonimportation, the commercial value of a designated and reasonably ascertainable quantity of the goods having been destroyed.

United States Court of Customs Appeals, May 17, 1912.

APPEAL from Board of United States General Appraisers, G. A. 7310 (T. D. 32108)

[Affirmed as to part and reversed as to part.]

*Searle & Pillsbury* (*William E. Waterhouse* of counsel) for appellants.

*William L. Wemple*, Assistant Attorney General (*Charles E. McNabb*, assistant attorney, of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

This case involves a considerable number of importations of Almeria grapes entered by appellants at the port of Boston, all concededly dutiable under paragraph 276 of the tariff act of 1909, which is as follows:

> 276. Grapes in barrels or other packages, twenty-five cents per cubic foot of capacity of barrels or packages.

The grapes were assessed for duty on the basis of the number of cubic feet of capacity of the barrels in which the same were contained without allowance being made for any rotten grapes found therein. The inspector reported that—

> the merchandise in question was to all outward appearances landed from the steamer in good condition.

The protest before us relates to one importation of 44 barrels, but it appears to be regarded as a test case and controlling as to the importations involved in the other protests. The appraiser reported these 44 barrels to be in the following condition:

> Twenty-nine barrels 5 per cent worthless, 15 barrels sound.

---

[1] Reported in T. D. 32570 (22 Treas. Dec., 937).

The importers protested the assessment, claiming that under subsection 22 of section 28 of the same act and by virtue of T. D. 30023, they were entitled to an allowance for the depreciation in value of the grapes and for all loss by reason of decay thereof.

The Board of General Appraisers upon hearing the protests overruled the same. We insert here the essential part of the opinion:

The duty imposed under said paragraph 276 seems to be a duty upon the capacity of the barrels or packages and not upon the quantity of grapes contained therein. It seems to have been assumed by Congress that importers would import grapes in standard packages of a certain size and that they would fill these packages to their average capacity. Hence, if a barrel of grapes should arrive with 25 per cent loss *in transitu* before arrival at the port of New York, it is clear that no allowance could be made for this shortage, because, as we have said, the assessment is made upon the package and not upon the quantity of grapes. We can see no difference between that case and the present one, where a quantity of the merchandise has been lost by decay or rot.

United States *v.* Mayer (71 Fed. Rep., 501), which we will later refer to, is then discussed, and the opinion closes with the following:

We find no regulations of the Secretary of the Treasury which seem to be applicable to a case of this particular character, and are of opinion that the collector acted within his province in refusing to make any allowance.

Subsection 22 of section 28 is as follows:

SEC. 22. No allowance shall be made in the estimation and liquidation of duties for shortage or nonimportation caused by decay, destruction or injury to fruit or other perishable articles imported into the United States whereby their commercial value has been destroyed, unless under regulations prescribed by the Secretary of the Treasury. Proof to ascertain such destruction or nonimportation shall be lodged with the collector of customs of the port where such merchandise has been landed, or the person acting as such, within ten days after the landing of such merchandise. The provisions hereof shall apply whether or not the merchandise has been entered, and whether or not the duties have been paid or secured to be paid, and whether or not a permit of delivery has been granted to the owner or consignee. Nor shall any allowance be made for damage, but the importers may within ten days after entry abandon to the United States all or any portion of goods, wares or merchandise of every description included in any invoice and be relieved from the payment of duties on the portion so abandoned: *Provided,* That the portion so abandoned shall amount to ten per centum or more of the total value or quantity of the invoice. The right of abandonment herein provided for may be exercised whether the goods, wares or merchandise have been damaged or not, or whether or not the same have any commercial value: *Provided, further,* That section twenty-eight hundred and ninety-nine of the Revised Statutes, relating to the return of packages unopened for appraisement, shall in no wise prohibit the right of importers to make all needful examinations to determine whether the right to abandon accrues, or whether by reason of total destruction there is a nonimportation in whole or in part. All merchandise abandoned to the Government by the importers shall be delivered by the importers thereof at such place within the port of arrival as the chief officer of customs may direct, and on the failure of the importers to comply with the direction of the collector or the chief officer of customs, as the case may be, the abandoned merchandise shall be disposed of by the customs authorities under such regulations as the Secretary of the Treasury may prescribe, at the expense of such importers. Where imported fruit or perishable goods have been condemned at the port

of original entry within ten days after landing, by health officers or other legally constituted authorities, the importers or their agents shall, within twenty-four hours after such condemnation, lodge with the collector, or the person acting as collector, of said port, notice thereof in writing, together with an invoice description and the quantity of the articles condemned, their location, and the name of the vessel in which imported. Upon receipt of said notice the collector, or person acting as collector, shall at once cause an investigation and a report to be made in writing by at least two customs officers touching the identity and quantity of fruit or perishable goods condemned, and unless proof to ascertain the shortage or nonimportation of fruit or perishable goods shall have been lodged as herein required, or if the importer or his agent fails to notify the collector of such condemnation proceedings as herein provided, proof of such shortage or nonimportation shall not be deemed established and no allowance shall be made in the liquidation of duties chargeable thereon.

The material part of T. D. 30023, which is a regulation of the Treasury Department, is as follows:

1. In order to obtain an allowance on account of shortage or nonimportation caused by decay, destruction, or injury to imported fruit, under the said provisions of law, the importers shall, within 48 hours after the arrival of the importing vessel, give notice in writing to the collector of customs of their intention to claim such allowance, which notice shall be in the following form:

Here follows an appropriate form of notice.

Upon receipt of such notice the collector will at once direct the appraiser to detail one or more examiners to make an examination of such fruit to determine the percentage of decay therein. Such examiner shall proceed promptly to select and set aside representative packages consisting of at least 5 per cent of each lot or mark, and will open and examine the same to determine the percentage of decay in the fruit contained therein. The appraiser shall make a return of such examination to the collector within 10 days after the landing of the merchandise, specifying the number of packages examined, the marks and numbers thereof, and the percentage of rotten and worthless fruit contained therein. The percentage of rotten and worthless fruit returned by the appraiser as found in the packages so examined shall be considered as the percentage of such fruit contained in the entire importation, and an allowance will be made accordingly in the liquidation of the entry.

The only issue in this case is whether the importers are entitled to the benefit of the provisions made in said subsection 22. Except as hereinafter stated the importers sufficiently complied with the foregoing regulations.

It is claimed in argument by importers' counsel, and is not denied, that after the promulgation of the foregoing regulations until about November, 1910, the collector at the port of Boston had treated importations of grapes in barrels or other packages as within the scope of the regulations, while at New York the practice contended for by the Government had obtained.

The Treasury Department issued instructions to the collector at the port of New York, under date of November 1, 1910, of the following tenor:

The department concurs in the opinion (previously expressed by the collector) that inasmuch as grapes in barrels or other packages are subject to a duty based upon the capacity of the containers thereof no allowance for damage because of decay can be allowed thereon.

And upon the authority thereof the collector at the port of Boston refused the allowance claimed here.

It is contended on behalf of the Government that the law in plain terms imposes duty upon these grapes according to the cubical capacity of the packages and not upon the quantity imported, and in support of its position it is urged that similar provisions in prior tariff laws have been construed to impose duty upon the capacity of the containers irrespective of contents.

The importers, on the other hand, contend that the provisions of said subsection 22 clearly apply to the merchandise at bar, and, among other things, urge in support of their contention that where duty is based on the capacity of a standard commercial package it presupposes a normal shipment of sound merchandise; that it is the merchantable portion thereof only that enters into commerce and in contemplation of law is dutiable; that the regulations of the Treasury Department, above quoted, are as clearly applicable to these grapes as to any other fruit; and in addition, urge that the doctrine of the Supreme Court in Lawder *v.* Stone (187 U. S., 281), as well as that of other cases cited is applicable.

It may be observed in passing that no provision of law similar to that found in subsection 22 seems to have existed in prior tariff laws.

It is necessary to the proper understanding of the issue to inquire somewhat into previous legislation. Under paragraph 299, act of 1890, grapes were made dutiable at 60 cents per barrel of 3 cubic feet capacity or fractional part thereof; under paragraph 301, oranges and certain other fruits were also dutiable at a specific rate based upon the cubical capacity of the packages containing the same, and if imported in bulk at the rate of $1.50 per thousand.

Under paragraph 214, act of 1894, grapes were made dutiable at 20 per cent ad valorem; under paragraph 216, oranges and certain other fruits paid a specific duty if in packages, based upon the cubical capacity of the containers, and if in bulk, at the same rate as under the act of 1890; and by paragraph 213½ pineapples were dutiable at an ad valorem rate.

Under paragraph 265, act of 1897, grapes were dutiable at 20 cents per cubic foot of the capacity of barrels or packages in which they were imported; under paragraph 266 oranges and certain other fruits were dutiable at 1 cent per pound; and under paragraph 268 pineapples in barrels and other packages were dutiable by the cubical capacity of their containers, and if in bulk, at a specific rate per thousand.

Under the provisions of paragraphs 276, 277, and 279, act of 1909, the last above-named methods of assessing duty on like merchandise are preserved.

In the case of Lawder *v.* Stone, *supra*, decided in 1902, the Supreme Court had before it the above provision of the act of 1894 for the

assessment of duty upon pineapples, and in connection therewith section 23 of the customs administrative act of 1890, which provided, in effect, that no allowance for damage to imported goods, wares, or merchandise should be made in the estimation and liquidation of duties thereon, but that abandonment might be made of any portion thereof included in the invoice, and the payment of duties thereon be thereby relieved, provided the portion so abandoned amounted to 10 per cent of the total value or quantity of the invoice. The pineapples in that case were invoiced by the dozen. Upon the discharge of the cargo the number of sound fruit was ascertained by estimation and there remained in the hold of the steamer a quantity of what was described as "slush," consisting of decomposed vegetable matter mixed with bilge water, and other débris, some in a liquid condition. This slush was brought up from the hold in baskets and was included by the inspectors in their estimation. The number of pineapples alleged to be contained in the slush was uncountable, but was roughly estimated by counting the pineapple tops and butts contained in a number of baskets of the slush, striking an average of these baskets, and then calculating the number contained in the whole quantity of slush according to that average. The number of pineapples in the slush thus ascertained was commercially valueless, and under sanitary regulations was dumped overboard. Such number was less than 10 per cent of the total invoice of the shipment, and the question was whether duty was assessable on that part of the cargo. The Supreme Court held it was not, saying, in effect, that the provisions of section 23 should not be construed as referring to an article, case, or package which, though in the semblance of merchandise, had become absolutely valueless because of natural causes or casualty occurring thereto while the article, case, or package was in transit to the United States, and that therefore the pineapples which had rotted and had become a part of the slush mentioned were outside of the category of imported goods, wares, or merchandise mentioned in this section and not liable to assessment for duty.

It will be noticed that duty was assessable under the law upon these pineapples at an ad valorem rate.

Subsequent to this decision of the Supreme Court there was considerable litigation on the subject of rotten fruit, to which this court has had occasion to refer in other opinions and which it is not deemed necessary to recite in full here.

In Stone v. Shallus (143 Fed. Rep., 486), decided in 1906, the Circuit Court of Appeals for the Fourth Circuit considered section 23 of the customs administrative act of 1890, and held that certain rotten oranges which were separated from the consignment of some 700 barrels, dutiable by the pound, which had been opened and repacked in the presence of customs officers and under Treasury regu-

lations, and which were not equal to 10 per cent of the weight of the entire shipment, were not dutiable under the doctrine of Lawder *v.* Stone. The Circuit Court of Appeals saying that it was not the box of oranges which was the unit of importation, but it was the pound, and that the rotten slush, formerly oranges, was not oranges within the meaning of the statute.

Reference may also be had to Courtin *v.* United States (143 Fed. Rep., 551) and Villari *v.* United States (147 Fed. Rep., 767) as showing the trend of judicial decisions on the subject.

It will be observed that these cases relate to fruits imported which under the applicable statutes were dutiable at ad valorem rates either by the pound or by treating the individual fruit as a unit.

In the case of United States *v.* Mayer (71 Fed. Rep., 501), decided in 1896 in the Circuit Court of Appeals for the Second Circuit, the merchandise was Malaga grapes, packed in cork dust, in half barrels containing about 2 cubic feet. The average capacity of 6 barrels which were measured was 2.078 feet. Paragraph 299, act of 1890, was in question. The average weight of the half barrels with contents was about 65 pounds. The grapes were assessed as if the barrels contained 3 cubic feet capacity or fractional part thereof. The importers claimed that from the cubical capacity of the containers an allowance should be made for the cork dust with which the grapes were packed. The court said there was no dispute as to the facts; that the grapes were as a rule packed in barrels containing about 3 cubic feet, often packed in half barrels, always packed in sawdust or cork dust for the purpose of protection in transportation, always sold by the barrel, the selling price including barrel, cork dust, and grapes, and were sold at auction in large quantities as soon as the importations reached this country. Referring to paragraph 301, same act, the court said it was obvious duty upon oranges was imposed by the package, so also the grapes were made dutiable by the standard commercial package, as they were bought and sold in the imported package, which the importer and the purchaser both uniformly recognized as the commercial unit. The court reversed the Circuit Court, which had sustained the importers' contention that nothing but the grapes should be considered. No question relating to the decay in the fruit was presented or considered.

The Government relies upon this case and others not necessary to cite upon the proposition that it is the cubic foot of the container that is the unit of grape importations upon which duty is by statute assessed.

It may be granted that this case is authority for saying that the substance in which the grapes are packed to keep them from crushing or otherwise suffering damage in the containers shall not be deducted from the cubic-foot capacity of the container which is the unit upon which duty is assessed.

Said subsection 22 was considered by this court in Vandegrift *v.* United States (3 Ct. Cust. Appls., 198; T. D. 32470), and it was there in substance held that Congress thereby intended to make provision for an allowance in the estimation and liquidation of duties upon fruit when by reason of decay, destruction, or injury during transportation there was a shortage therein or in fact a nonimportation thereof as a result of which its commercial value was destroyed.

The language of the subsection is equally applicable to grapes as to other fruit. Congress of course had in mind the provisions of the respective duty paragraphs, and knew that grapes with other fruits were liable to decay in transit. It did not see fit by express language to exclude grapes from the benefit of the provision relating to fruits, nor was the same limited to fruit alone, but was extended to other perishable articles. The limitation is to be found in the fact that the Secretary of the Treasury is to prescribe regulations appropriate to the ascertainment of the allowance and that the subsection itself fixes the time within which the evidence showing decay, loss, or damage shall be taken.

The regulations upon their face do not indicate that grapes are to be excluded therefrom, but seem to contain provisions applicable thereto.

From what has been said it is clear that we must adopt either the narrow technical rule that, *because* the unit for the assessment of duty is the cubic foot, if any grapes therein are sound all are legally presumed so to be, although contrary to the fact, or, the broader one, that it is the intent of the law as a whole to impose duty upon such grapes as are, when imported, of commercial value and not upon a decayed, rotten substance of no commercial value and of no use, whatever may be the unit for assessment, provided the proportion decayed may reasonably be ascertained.

We think the latter is the wiser and sounder rule and is in accord with the authorities.

It is not urged here, and indeed the record shows to the contrary, that there is any physical difficulty in determining what part of these grapes are decayed and worthless.

It is not intended hereby to disturb the rule of United States *v.* Mayer, *supra.* Thereunder no allowance can be had for the usual packing material placed with the grapes in the containers and hence the allowance to which importers are entitled here is not to be computed upon the percentage which the decayed grapes bear to the entire quantity of grapes in the container, but to the percentage which such decayed part bears to the cubical capacity of the container. We are prompted to this observation because to us the record is not entirely clear in this respect.

The contention of the Government that if in a given package but a few grapes were placed and all were when imported free from decay,

the few would pay duty based upon the entire cubical capacity of the container does not impress us as making against our conclusion. It is commercially unlikely, and whether so or not does not touch the question of what ought to be done when grapes actually shipped are rendered worthless by decay before entry.

As one reason, which strongly appeals to us, why the contention of the Government ought not to be sustained, it may be observed that pineapples are now dutiable by cubical capacity of containers when therein imported in the same manner as grapes, or, if imported in bulk, at a specific rate per thousand. If the Government prevails, it would follow that a like contention as to pineapples imported in containers must be upheld, while as to those in bulk the contrary rule would obtain; that is, in the one case the rotten pineapples would pay a duty, while in the other they would not. We think if Congress intended to make this distinction it should have expressed such intent in language clear and certain.

While the various statutes to which we have referred imposing duties upon fruit, including grapes, have treated the cubical capacity in feet of the containers thereof when so imported as the unit for assessment of duty, yet such has not always been, and is not now, the invariable rule.

To illustrate, under the tariff act of 1890 grapes were dutiable by the cubic foot capacity of containers, under the act of 1894 they were dutiable at ad valorem rates, while by the acts of 1897 and 1909 the cubical foot capacity unit was restored and preserved. Under the first two statutes oranges and certain other fruits were dutiable by cubical foot capacity of containers, when so imported, and by the thousand when imported in bulk, while under the last two acts duty was fixed by the pound alone. Pineapples were dutiable at ad valorem rates when first referred to, while the acts of 1897 and 1909 fix duties thereon by both methods.

We do not think from this it can be concluded that Congress intended to establish a discrimination against or in favor of either method of importation, or to declare by subsection 22 that one unit of assessment might have the benefit of an allowance for rot and that the other should be excluded therefrom. No reason for such a discrimination appears and none is claimed. It is more reasonable to suppose that the distinction as to duty between fruits in containers and in bulk arose from an effort on the part of Congress to adapt the rates to the methods of shipment in use, thereby facilitating the examination of importations and the determination of amounts of duty. Upon this theory the different statutes are harmonious and the cited decisions do not conflict. Not only this, but an unfounded discrimination between like fruits contemporaneously shipped by the two methods and suffering equal relative damage by decay is thereby

avoided, and the principle underlying the decisions that merchandise shipped for importation, but which is destroyed in transit and is never in fact imported or becomes the subject of commerce here, should not be taxed unless Congress has plainly so declared, is recognized and applied.

The several cases referred to by the Government involving duty upon fish in tins, do not seem to be opposed to the conclusion we reach.

The record shows that evidence as to the method of examining the importations in question was received by the board subject to the objection of the Government that the board had no jurisdiction of the case. Neither party has discussed the question of jurisdiction in this court and it is not considered.

We understand it to be agreed that as to the protests numbered 487021–3523, 493466–3624, and 493462–3621 the above regulations of the Secretary of the Treasury were not complied with, and therefore hold as to them the judgment of the Board of General Appraisers should be *affirmed.*

As to the other protests, it is adjudged that the judgment of the board be *reversed,* and reliquidation thereof is ordered pursuant to the views herein expressed.