## HARRIS & Co. *et al. v.* UNITED STATES (No. 1548).[1]

1. NOTICE WITHIN 48 HOURS OF INTENTION TO CLAIM IS A PREREQUISITE TO ALLOWANCE FOR DESTRUCTION.

Where the importers of grapes, part of which are claimed to have been rotten, did not comply with subsection 22 of section 28, tariff act of 1909, and the regulation of the Secretary of the Treasury that notice of an intention to claim an allowance must be filed with the collector within 48 hours after the arrival of the importing vessel, the allowance will not be made.

2. MAKING OF PROOF WITHIN 10 DAYS ALSO A PREREQUISITE.

Where such claim was seasonably filed and no evidence to support it was filed with the collector within 10 days after the arrival of the importing vessel, as required by said statute and regulation, the allowance will not be made; and the fact that the appraiser made no report on the claim to the collector, as required by regulation, does not relieve the claimant of the duty to make proof within 10 days and allow him to make it afterwards.

United States Court of Customs Appeals, December 6, 1915.

APPEAL from Board of United States General Appraisers, G. A. 7677 (T. D. 35120).

[Affirmed.]

*Searle & Waterhouse* (*William E. Waterhouse,* of counsel) for appellants.
*Bert Hanson,* Assistant Attorney General, for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

Some 400 or 500 protests are involved in this case. The question at issue is whether the importers shall receive an allowance in duty for rot in certain Almeria grapes imported in barrels at the port of Boston during the seasons of 1911 and 1912, and assessed for duty under paragraph 276 of the tariff act of 1909. The importers claim the allowance under subsection 22 of section 28 of the same act and regulations prescribed by the Secretary of the Treasury thereunder, published in T. D. 30023.

When the protests were first heard it seems the greater part thereof were sustained. Subsequently an application for rehearing was made on behalf of the Government and granted by the Board of General Appraisers. Thereafter further evidence was taken and cognizance had of some additional protests, with the result that all the protests now before this court were overruled.

The appeal here, so far as it relates to protests numbered 625778 and 715594 of Harris & Co., is waived in open court by the importers upon the argument of the case.

The remaining protests before us have by the board been classified under four schedules, which, for convenience, we quote, omitting

---

[1] Reported in T. D. 35978 (29 Treas. Dec., 704).

therefrom the numbers of the particular protests which respectively fall thereunder:

*Schedule I.*—Protests in which no notice whatever in writing of intention to claim allowance for rot is found in the record, and in which cases no return of damage appears to have been made by the appraiser to the collector within 10 days after the landing of the merchandise and where no proof whatever of rot was lodged by the importers with the collector: * * *.

*Schedule II.*—Protests in which notice in writing of intention to claim allowance for rot was not filed with the collector by the importers until more than 48 hours after the arrival of the vessel, as evidenced by the date of the notice, and in which cases no return of rot appears to have been made by the appraiser to the collector within 10 days after the landing of the merchandise and where no proof whatever of rot was lodged by the importers with the collector: * * *.

*Schedule III.*—Protests in which notice in writing of intention to claim allowance for rot was duly given to the collector by the importers within 48 hours after the arrival of the vessel, but in which cases it does not appear that the appraiser made a return of his examination to the collector within 10 days after the landing of the grapes, and no proof whatever of any rot was lodged with the collector by the importers: * * *.

*Schedule IV.*—Protests in which the appraiser appears to have made a return of his examination to the collector within 10 days after the landing of the merchandise, but in which cases, however, it appears that the importers did not give notice in writing to the collector of intention to claim allowance for rot until more than 48 hours after the arrival of the vessel, as affirmatively evidenced by the date of the notice as well as by the collector's receipt stamped on the face thereof: * * *.

The findings of the board recited in these schedules are based wholly upon the files in the case and without regard to the testimony of witnesses.

It will be observed respecting the claims for allowance that as to Schedule I no notices thereof were in the files; that as to Schedules II and IV these notices, while apparently filed, were not lodged with the collector until more than 48 hours had elapsed after the arrival of the importing vessel; and that as to Schedule III they seem to have been filed within that period.

That respecting proof of rot as to Schedules I, II, and III there were no returns thereof made by the appraiser to the collector within 10 days after the landing of the merchandise; and that as to Schedule IV, the returns by the appraiser to the collector showing examination of the merchandise, had been made within the 10 days, although, as already stated, claims for the allowances were not filed within 48 hours after the arrival of the importing vessel.

The importers concede that in no case have they filed any proof of destruction or nonimportation with the collector.

In addition to the findings contained in the foregoing schedules, the board further said:

We find there is filed with each protest, even in the case of those where the appraiser made a return of his examination to the collector within 10 days

after the landing of the merchandise, a letter addressed by the appraiser to the collector reporting on the condition of the grapes as found by him upon examination and giving the percentages of the rots so found. These letters were written several months after the importations, and, while they indicate that the appraiser at some time made an examination of the grapes, they do not, in themselves, show when the examination was made or whether a return of same was made to the collector within the period of 10 days after landing.

The Government examiner at Boston testified that during the whole time that the tariff act of 1909 was in force it was the practice of the appraiser's office to detail a Government examiner to make an examination of all importations of grapes at the auction rooms at the time of sale when they are exposed and sampled, and that a record of the percentages of rots is noted in the usual sale catalogues, which are kept as part of the records of the office, and that the appraiser's returns or reports are made up from such records. The witness further testified that it was the practice to have an examination of grapes made in the manner stated, whether an application was transmitted by the collector or not, and that such examination was made within about four or five days after the landing of the fruit.

In view of this testimony, we think we can safely assume in all of these cases that an examination of the grapes was made by the appraiser within proper time, and that the result of such examination is correctly shown either in his return to the collector on the back of the usual appplication blank or in his letter to the collector reporting on the protests. Whether a return of such examination showing the percentages of rots was made to the collector by the appraiser within 10 days after landing of the merchandise, as required by the regulations of the Secretary, is of course another question.

All the importations covered by this decision were made during the season from about November, 1911, to February, 1912, inclusive. As a reason for the absence of importers' written notice to claim allowance for rot in the protests covered by Schedule I, the importers have shown by the testimony of the official in charge of the foreign entry division of the customhouse at Boston that under departmental instructions contained in letter dated November 1, 1910, serial No. 68980, and marked "Exhibit 2," all applications for allowance were thereafter rejected and refused by the collector's office up to about December 5, 1911, and a short time thereafter. This action of the Government officials may account for the absence of the notice in these particular protests, but there is no satisfactory proof that the notices were filed with the collector within the required 48 hours after the arrival of the vessel. The fact that the notices themselves in the case of the protests covered by Schedules II and IV show by their date and the collector's stamp that they were filed more than 48 hours after the arrival of the vessel would preclude us from assuming that they were filed in time in the case of these other protests covered by said Schedule I.

We understand importers' claims in effect here are (a) that in the case of each protest a notice of an intention to claim an allowance was seasonably tendered and refused or seasonably tendered, accepted, and filed and (b) that the ascertainment of the percentages of rot as shown by the foregoing findings of the board is a sufficient compliance with the statute providing for proof on that subject in view of the circumstances of this case, and, in this connection, im-

porters claim to have established by testimony that an agreement was made between them and an assistant appraiser at the port of entry, the effect of which was to relieve the importers of the duty of filing proof of loss in any case and to require the collector to accept as such proof percentages thereof found by the examiners, whether or not the same were returned to him by the appraiser within 10 days after landing, it appearing that such percentages were at least 5 per cent in each case.

In so far as the findings of the board do not accord with the foregoing claims the importers claim error.

Before considering fully importers' contentions a brief reference should be made to the applicable statutes and the Treasury regulations thereunder. All of these have been fully examined in Vandegrift *v.* United States (3 Ct. Cust. Appls., 198; T. D. 32470); Harris *v.* United States (3 *ibid.*, 265; T. D. 32570); and United States *v.* Harris (4 *ibid.*, 116; T. D. 33392), and it seems unnecessary to here repeat the same.

In substance the statute declares that no allowance is to be made unless under regulations prescribed by the Secretary of the Treasury, and that proof of destruction or nonimportation shall be lodged with the collector within 10 days after the landing of the merchandise.

The regulations in substance provided that the importer shall within 48 hours after the arrival of the importing vessel give notice in writing to the collector that he intends to claim an allowance and that upon receipt of such notice the collector will at once direct the appraiser to detail one or more examiners to examine the fruit to determine the percentage of decay therein. The appraiser is required to make return of such examination to the collector within 10 days after the landing of the merchandise.

This regulation, however, does not relieve or deprive the importer of the right, whenever he desires, nor of the duty when necessary for his protection, of filing proof upon his own behalf. The statute provides that such proof shall be lodged with the collector within 10 days. It follows, if no such proof is so lodged, that there is nothing on that subject for the collector to consider. Vandegrift *v.* United States, *supra*.

Now, as to the protests embraced in Schedules I, II, and III, no proof of destruction or nonimportation whatever was lodged with the collector within 10 days after the merchandise was landed, so the question really is, do the importers show, assuming it could be shown, anything that excuses or renders unnecessary so lodging such proof.

Barring the question of authority on the part of any customs official to make a valid agreement to that effect, we do not think any agreement of that import is shown here. So far as any is claimed, it was not with the collector but with an assistant appraiser, and the precise evidence upon which the claim is founded is as follows:

Q. Did you go over this question of allowance for rot on grapes with the late Rufus Flanders, who was the head of that department?—A. I did, sir.

Q. Was it in response to an agreement between him and you that his examiners were furnished a place at the auction rooms and given an opportunity to examine at the sale?—A. Yes, sir.

In addition we have carefully examined the whole record with respect to this claim and feel constrained to hold, whatever may be thought of its effect if proven, that the importers have wholly failed to establish the agreement they claim existed.

It is clear from the record, and as found by the board, that the collector's office for a part of the time covered by these importations refused to accept claims for damage of these importers as well as others, which probably accounts for the fact that from some of the files notice of such claims are missing altogether.

But this would not change the conclusion we have already reached as to the protests covered by Schedules I, II, and III. The fact that through an erroneous interpretation of the statute the customs officers refused to allow for rot, when the grapes were imported in barrels, would not relieve the importers from the duty of making their proof. The fact of such refusal would naturally inform the importers that the customs officers might not upon their part file any proof touching the matter.

This leaves for consideration the protests under Schedule IV, where the board found the appraiser had made a return of his examination within 10 days after the landing of the merchandise, and also found that no notice in writing of an intention to claim an allowance for rot had been given by the importers within 48 hours after the arrival of the vessel.

Perhaps the first question to be considered here is whether the board should be sustained in its finding that this notice was not given within the 48 hours, in view of the importers' contention first above stated.

As we understand it, the evidence, except the files referred to in Schedule IV, upon this subject was that of Mr. Doherty, a customs broker representing importers, who testified as follows:

Q. I want to ask you if during that period when the applications were being rejected you filed or offered to file applications with your entries?—A. I did, sir.

Q. And in subsequent seasons have you covered each entry you have made out by application?—A. Every time, even up to to-day.

Attention was then called to a letter referring to seven particular protests and he was asked "whether that has been called to your attention before?"

A. In that particular case?

Q. Yes.—A. I can not state in this particular case, but I can state that I attended to all the filing of applications myself and know of no case where I did not offer for acceptance and file with the entry a certificate or application for damage.

Q. Is it possible that those seven were not covered by original applications of yours?—A. In view of the statement just made by me I should state that I think it impossible for me to have not filed those applications either by filing or offering for acceptance.

Q. During that period when they were rejected ,how long did that continue?—A. I can not tell exactly, but I think the greater part of the whole season I would go up there and ask the chief clerk if they still accepted those applications, and make an offer of it, and he would say no, they are not.

Q. (By Mr. BARNES). Did you actually make any offer of the applications and have them refused?—A. I did, sir.

Q. They were returned to you?—A. Yes, sir.

Q. You are quite clear about that?—A. Absolutely, sir. Those that were accepted were put away in a drawer and for a long time were filed away on the sixth floor in the statistical department in various receptacles.

Q. Aside from those that were received, did you offer any that were returned?—A. Yes, sir.

When it is considered that the board states under Schedule IV that the notices were both dated and receipt stamped after the 48 hours had expired, we do not think the foregoing evidence warrants a reversal of its finding with respect thereto.

It is proper to state here that the importers do not claim that any notice in the files imports other than as found by the board.

The final question then is, Can the importers be allowed for rot under the protests in Schedule IV?

The regulations provide that "in order to obtain an allowance on account of shortage or nonimportation caused by decay * * * the importers shall within 48 hours after the arrival of the importing vessel give notice in writing * * *." We think the giving of this notice is a prerequisite condition to obtaining the allowance. The statute vests authority in the Secretary of the Treasury to make regulations and makes compliance therewith a condition precedent to recovery. As we said in Vandegrift *v.* United States, *supra*, these regulations, so far as considered, seem to be reasonable and they are not otherwise claimed here.

It is quite apparent in this case that the percentage of rot reported by the appraiser to the collector was not made as a result of a seasonable notice of intent to claim damage, but was a report thereof made in accordance with an established practice in the collector's office, as the board says in its above-quoted finding, "within about four or five

days after the landing." It was not the report, therefore, which the regulations called for when the notice of intention to claim damage was seasonably filed, although we do not say that it might not be sufficient if the notice had been so filed.

If we were to hold that the notice of an intention to claim an allowance for rot need not be filed within 48 hours after the arrival of the importing vessel, the question would at once arise within what time it must be filed if filed at all. The regulation itself is not ambiguous. Its object is clearly to enable the customs officers to investigate the facts and to give them time to determine the merits thereof. To say that it need not be complied with would be to upset the theory upon which the regulations are made and disturb the orderly enforcement of the law itself. There is nothing here that justifies us in holding that the filing of this notice as prescribed in the regulations is not a condition precedent to recovery.

We find no error in the judgment below and it is therefore *affirmed.*