(C. D. 1067)

BORDER BROKERAGE CO. ET AL. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided October 29, 1947)

*Lawrence & Tuttle* (*George R. Tuttle* and *Frank L. Lawrence* of counsel) for the plaintiffs.

*Paul P. Rao*, Assistant Attorney General (*Arthur R. Martoccia, Joseph E. Weil*, and *William J. Vitale*, special attorneys), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges

CLINE, Judge: These are protests against the collector's assessment of duty on certain merchandise, described in the invoices as refuse screenings, at 5 per centum ad valorem under paragraph 731 of the Tariff Act of 1930, as modified by the trade agreement with Canada, T. D. 49752, as screenings or scalpings. It is claimed that the merchandise is free of duty under Public Law 211, approved December

22, 1943 (57 Stat. 607), or Public Law 272, approved March 29, 1944 (58 Stat. 131).

At the original hearing a motion was made by counsel for the defendant to dismiss the protests on the ground that the importers had failed to comply with the customs regulations in not filing the requisite affidavits of usage. At a subsequent hearing the motion was broadened as follows:

Now Government counsel renews its motion not only to dismiss the protests, but alternatively, that the protests be overruled for failure of the importer to comply with the necessary Customs Regulations, which the Government contends are mandatory and a condition precedent before the importer can receive any assistance from this court or any relief from this court on its protest.

The pertinent provisions of Public Law 211 (57 Stat. 607) are as follows:

* * * That notwithstanding the provisions of the Tariff Act of 1930, the following, when imported into the United States from foreign countries, and when entered, or withdrawn from warehouse, for consumption, during the period of ninety days beginning with the day following the date of enactment of this joint resolution, to be used as, or as a constituent part of, feed for livestock and poultry, shall be exempt from duty: Wheat, * * * or products in chief value of one or more of the foregoing or derivatives thereof: * * *

SEC. 2. The exemptions from duties provided for by this joint resolution shall be subject to compliance with regulations to be prescribed by the Secretary of the Treasury.

The material provisions of Public Law 272 (58 Stat. 607), which extended the period of exemption to June 20, 1944, are the same as those contained in Public Law 211, *supra*.

The following regulations were enacted under Public Law 211, on December 31, 1943 (title 19, Code of Federal Regulations, 79 Treas. Dec. 122, T. D. 50983):

58.2 *Entry requirements.* (a) There shall be filed in connection with the entry an affidavit of the importer that the merchandise, which shall be described by name, is imported to be used as, or as a constituent part of, feed for livestock or poultry.

* * * * * * *

58.3 *Proof of use.* (a) Within 1 year from the date of entry (in the case of warehouse entries as well as consumption entries) the importer shall submit an affidavit of the superintendent or manager of the manufacturing plant stating the use to which the article has been put. * * *

On April 3, 1944, the following regulations were issued pursuant to Public Law 272 (title 19, Code of Federal Regulations, 79 Treas. Dec. 189, T. D. 51033):

58.1 *Free entry of feedstuffs.*

* * * * * * *

(b) Screenings or scalpings are not a product or a derivative of the grain or seed from which screened, but if the screenings or scalpings are in chief value of

wheat, oats, barley, rye, flax, cottonseed, corn, or hay, and/or derivatives thereof, they may be admitted free of duty under the provision in Public Law 211, as amended for products in chief value of the named products or derivatives thereof, provided they are used as, or as a constituent part of, feed for livestock, or poultry.

\*　　\*　.　　\*　　\*　　\*　　\*　,　\*

58.2 *Entry requirements.* (a) There shall be filed in connection with the entry an affidavit of the importer that the merchandise, which shall be described by name, is to be used as, or as a constituent part of, feed for livestock or poultry.

.\*·　　\*　　\*　　\*　　\*　　\*　　\*

58.3 *Proof of use.* (a) Within 1 year from the date of entry (in the case of warehouse entries as well as consumption entries) the importer shall submit an affidavit as to the use made of the importation in the United States.　\*　\*　\*

Plaintiffs' brief contains the following statement:

As alleged in defendant's motions, the importers in these cases did not comply with these regulations, in that they did not file either the affidavit of intent or the affidavit of use.

(Proof-of-use affidavits are on file in connection with some of the entries, but the sufficiency of these are not passed upon herein.)

Plaintiffs claim that they are excused from filing these affidavits because, in accordance with the regulation of April 3, 1944, section 58.1 (b), *supra*, the collector would have found the merchandise dutiable in any event. In this connection, plaintiffs called Jesse G. Ogdon, deputy collector at the port of Seattle, who testified as follows:

\* \* \* Mr. Ogdon, did you have those instructions before you prior to the liquidation of this entry?—A. Yes.

Q. I will show it to you. And then I take it, regardless of whether the importer had complied, that is, furnished an affidavit of intended use and the affidavit of actual use, you would have liquidated just as you did, namely, dutiable?—

\*　　\*　　\*　　\*　　\*　　\*　　\*

A. Our practice at the time this entry was liquidated was to assess duty on refuse screenings following the T. D.

Judge EKWALL: That isn't the question he asked you. The question he asked you was this: Would you have assessed duty just the same, regardless of whether he had complied with the regulation and filed this document he mentioned? Do you know whether you would or not?

The WITNESS: Well, according to our practice at that time we were assessing duty on refuse screenings and, therefore, I would have assessed duty on refuse screenings.

In *C. J. Tower & Sons* v. *United States*, 14 Cust. Ct. 94, C. D. 919, appeal dismissed July 9, 1945, 33 C. C. P. A. 190, this court held that oat scalpings, consisting of cultivated oats, wheat, chaff, and wild oats, were entitled to exemption under Public Law 211 and Public Law 272, and in *Kerr-Gifford & Co., Inc.* v. *United States*, 15 Cust. Ct. 187, C. D. 969, it was held that the exemption also applied to merchandise known as refuse screenings. The merchandise in the

latter case was imported after section 58.1 (b), *supra*, was issued. We held that this regulation deprived the importer of a right granted by Congress and was therefore unreasonable and invalid. That case was decided on December 7, 1945, subsequent to the liquidations in the instant case.

Assuming for the purpose of this motion that the merchandise herein is similar to that involved in *C. J. Tower & Sons* v. *United States, supra,* and *Kerr-Gifford & Co., Inc.* v. *United States, supra,* the issue to be decided is whether the plaintiffs are excused from filing the affidavits required by the regulations on the ground that the collector would have found the merchandise dutiable in accordance with section 58.1 (b) of the regulations and compliance with the other regulations would have been useless.

Since the exemptions under Public Law 211 and Public Law 272 were granted subject to compliance with regulations to be issued by the Secretary of the Treasury, compliance therewith has been held to be a condition precedent to the right accorded. *M. A. Hoenecke* v. *United States,* 17 Cust. Ct. 4, C. D. 1010; *Geo. S. Bush & Co., Inc.* v. *United States,* 18 Cust. Ct. 209, Abstract 51761.

Plaintiffs claim, however, that the law does not require the performance of useless acts, citing *Tacey* v. *Irwin,* 85 U. S. 549. In that case, tax commissioners had issued a general rule refusing to receive taxes unless tendered by the owner of the property in person. After the premises in question were advertised for sale, a relative of the owner went to the office of the commissioners to see about the payment of the tax but did not make a formal offer of payment. It was held that the owner had a right to pay in person or through any one not disavowed by him; that this right had been denied by the rule adopted by the commissioners; that the general rule had the effect of a refusal to accept a tender made by some one other than the owners; and that because of such rule a regular tender was excused.

That case can be distinguished from the instant case in that the very regulation which was not complied with was declared invalid and the payment itself would have been refused, if tendered. In the instant case, the regulations requiring the filing of affidavits of use are reasonable and valid and there is no evidence that the collector would have refused to accept those affidavits, if tendered.

In customs cases, the courts have required strict compliance with regulations prescribed by the Secretary of the Treasury under specific provisions of the statutes. *United States* v. *Morris European & American Express Co.,* 3 Ct. Cust. Appls. 146, T. D. 32386, *Mac-Nichol Packing Co.* v. *United States,* 14 Ct. Cust. Appls. 400, T. D. 42050; *United States* v. *William A. Bird,* 16 Ct. Cust. Appls. 306, T. D. 42876, *United States* v. *Ricard-Brewster Oil Co.,* 29 C. C. P. A.

192, C. A. D. 191. In *Kronfeld, Saunders & Co.* v. *United States*, 4 Ct. Cust. Appls. 60, T. D. 33308, the merchandise was shipped from France 13 days after the statute became effective and 1 day before the regulations thereunder were issued. It was held that since the importer failed to file the documents required by the regulations, the merchandise was not entitled to free entry as an artistic antiquity. In *United States* v. *Morris Friedman*, 21 C. C. P. A. 496, T. D. 46960, the fact that the purchaser could not secure the information required by the regulations because the foreign seller refused to give it, did not excuse compliance with the regulations. In *Maple Leaf Petroleum, Ltd.* v. *United States*, 25 C. C. P. A. 5, T. D. 48976, it was held that the importer was not excused from filing documents required by the regulations, although the collector knew all the facts in the case.

In *Harris & Co. et al.* v. *United States*, 6 Ct. Cust. Appls. 420, T. D. 35978, the statute provided that no allowance for rotten fruit was to be made except under regulations prescribed by the Secretary of the Treasury and that proof of destruction or nonimportation should be filed with the collector 10 days after landing. The regulations provided that the importer should within 48 hours after the arrival of the vessel give to the collector a notice of intention to claim an allowance and that upon receipt of such notice, examiners should be designated to examine the fruit and determine the percentage of decay. A return of such examination was to be made to the collector in 10 days. In that case, no proof of destruction or nonimportation was filed with the collector within 10 days after the merchandise was landed and the question at issue was whether the importers were excused from filing such proof. It was held that they were not, even though it was found that at the time of the importations the collector's office was refusing to accept claims for damage from these importers and others. The court said (p. 424):

* * * The fact that through an erroneous interpretation of the statute the customs officers refused to allow for rot, when the grapes were imported in barrels, would not relieve the importers from the duty of making their proof.

On the other hand, compliance with mandatory regulations has been excused only in cases of impossibility or where the collector's act or failure to act prevented the importer from compliance. *United States* v. *Conkey & Co.*, 6 Ct. Cust. Appls. 487, T. D. 36122; *United States* v. *Coastwise Steamship & Barge Co.* 9 Ct. Cust. Appls. 216, T. D. 38047; *Close & Stewart* v. *United States*, 11 Cust. Ct. 14, C. D. 784; *de Lima Correa & Cortissoz (Inc.)* v. *United States*, 43 Treas. Dec. 428, T. D. 39623. In the case last cited, the regulations provided that the exporter of drums should file with the collector at least 6 hours before exportation a notice of intent to export; that the .

collector should then designate an officer to examine the shipment and report by indorsement upon the notice of intent; and that the collector should forward to the American consul a certificate of exportation showing that the merchandise had been exported. It was further provided that when the foreign shipper desired to return the drums he should make an affidavit before the American consul and that upon verifying the statements in the affidavit from the records in his office the consul should issue a certificate stating that the facts were in accordance with his record. It appeared in that case that due notice of exportation was given but the collector failed to designate an officer to examine the shipment and forward to the American consul the certificate of exportation, so that the consul had no record from which to verify the affidavit of the foreign shipper and the importer was prevented from securing the foreign shipper's affidavits and the certificate of the consul. It was held that the collector's failure to act did not annul the importer's rights and the failure to file the required documents was excused.

It appears from the above discussion that the courts have applied the rule requiring compliance with mandatory regulations strictly and excuses have been limited to cases of impossibility. In the instant case, no such impossibility exists; the importers could have filed the requisite affidavits but failed to do so.

Moreover, in *Harris & Co. et al.* v. *United States, supra,* it was held that compliance with the regulations was necessary even though the collector's office was rejecting the claims. In *S. Schapiro & Sons* v. *United States,* 29 C. C. P. A. 235, C. A. D. 196, and *Pink Supply Co.* v. *United States,* 32 C. C. P. A. 48, C. A. D. 284, there was involved a regulation providing that certain cotton rags known as Japanese wipers contained no mingled quantities of paper stock segregable under section 508 of the Tariff Act of 1930 and that all "Japanese wipers" were dutiable as cotton rags not chiefly used for paper making. It had been held in *United States* v. *S. Schapiro & Sons* (cross-appeals), 24 C. C. P. A. 343, T. D. 48771, that this regulation was without warrant of law and of no effect. Nevertheless, the court decided that the obligation of the importer to segregate his merchandise under section 508 was not dispensed with, although such segregation would have been of no avail under the regulation as it existed at the time of importation. The court said in *S. Schapiro & Sons* v. *United States,* 29 C. C. P. A. 235, C. A. D. 196, at page 241:

It is urged on behalf of appellants that while T. D. 46106, Abstract 4, was in effect, there was no obligation on the importer either to make segregation under section 508, *supra,* or to offer to segregate.

That contention is based, as we understand it, upon the fact that even if segregation had been made the collector, acting under the instructions from the Commissioner of Customs, would have assessed all the merchandise at 3 cents per pound.

Several authorities were cited in support of the proposition stated in appellants' brief that "There are many situations in law in which the performance of a duty, either contractual or statutory, is dispensed with, and, where performance is dispensed with, it is, of course, unnecessary to offer to perform."

A review of those authorities is not deemed necessary because we do not think that, granting the correctness of the rule, it is applicable here. Whatever the situation with respect to the departmental ruling (and as heretofore recited it was held invalid) the statute—section 508, *supra*—was valid and in effect. Furthermore, as will be seen from the text of circular letter 942, *supra*, importers of rags were not precluded from segregating them while in customs custody. On the contrary, it was stated that they should be granted that privilege. Had appellants requested that procedure in this case and met with a denial, a different question of law would confront us. If the request had been made and granted and the segregation made, apparently the situation would be analogous to that which existed in the *Schapiro & Sons* (cross-appeals) cases, *supra*.

The situation in the instant case is analogous. The regulation requiring the filing of affidavits of use and intended use was valid and in effect. The importers were not prevented from filing these affidavits. Had they filed the affidavits, the case would have been analogous to *Kerr-Gifford & Co., Inc.* v. *United States, supra,* (assuming, of course, that the merchandise was similar, and that it was actually used as, or as a constituent part of, feed for livestock or poultry).

It cannot be said that the filing of the affidavits of use and of intended use is an entirely useless act. Since the entries herein list the merchandise as dutiable under paragraph 731, the affidavit of intended use was necessary to advise the collector that a claim for free entry was being made. *M. A. Hoenecke* v. *United States, supra.* Although the deputy collector stated that the merchandise herein, refuse screenings, would have been liquidated as dutiable pursuant to section 58.1 (b) of the regulations, he had 90 days after the filing of a protest to such liquidation in which to review his decision. (Tariff Act of 1930, section 515.) Had the regulation been rescinded or declared void during that period, the collector would have reconsidered his decision; but, without any affidavits before him, he would not have known whether the merchandise had been used as feed for livestock or poultry and so could not have changed his rulings.

Defendant's motion that the protests be overruled for failure of the importers to comply with the regulations is therefore granted. Judgment will be rendered accordingly.