(C.D. 4743)

J. E. Bernard & Co., Inc. v. United States

---

[3] That case discusses an extreme situation. Evidence had been adduced for the purpose of establishing that goods claimed to have been of American manufacture were imported through the same port as exported. Export records purported to have been filed at the customhouse had been destroyed. The court held that impossibility of compliance did not of itself santion free entry of the merchandise.

Court Nos. 70/55522, etc.

(Decided May 23, 1978)

*Barnes, Richardson & Colburn* (*James S. O'Kelly, Edward F. Christopher,* and *Michael A. Johnson* of counsel) for the plaintiff.

*Barbara Allen Babcock,* Assistant Attorney General (*Sidney N. Weiss,* trial attorney), for the defendant.

MALETZ, Judge: In these 24 consolidated cases the court is called upon to determine the proper classification of certain plastic cuprophan tubing which was exported from Germany, Belgium and France and entered at the port of Chicago between May 1969 and March 1972. Plaintiff is a customhouse broker which entered the merchandise for the account of Travenol Laboratories, Inc. The initial shipments of merchandise were classified by Customs under item 772.65 of the Tariff Schedules of the United States (TSUS), as modified by T.D. 68–9, as tubing of plastics, suitable for conducting liquids or gases and assessed duty at the rates of 6.5% ad valorem in 1969 and 5.5% ad valorem in 1970; later Customs classified the merchandise under item 771.35, as modified by T.D. 68–9, as other seamless tubing of cellulosic plastics materials and assessed duty at rates ranging from 14¢ per pound in 1970 to 10¢ per pound in 1972.

Plaintiff claims that the merchandise is properly classifiable under item 854.20 which provides for the free entry of cellulosic plastics materials imported for use in artificial kidney machines or apparatus by a hospital or patient pursuant to a physician's prescription.

The pertinent statutes read as follows:

## Tariff Schedules of the United States

GENERAL HEADNOTES AND RULES OF INTERPRETATION

\* \* \* \* \* \* \*

10. General Interpretative Rules. For the purposes of these schedules—

\* \* \* \* \* \* \*

(e) in the absence of special language or context which otherwise requires—

\* \* \* \* \* \* \*

(ii) a tariff classification controlled by the actual use to which an imported article is put in the United States is satisfied

only if such use is intended at the time of importation, the article is so used, and proof thereof is furnished within 3 years after the date the article is entered;

\* \* \* \* \* \* \*

Classified under:
 Schedule 7, Part 12:

 \* \* \* \* \* \* \*

 Film, strips, sheets, plates, slabs, blocks, filaments, rods, seamless tubing, and other profile shapes, all the foregoing wholly or almost wholly of rubber or plastics:
 Of cellulosic plastics materials:

 \* \* \* \* \* \* \*

 Other:

 \* \* \* \* \* \* \*

771.35 Other _____ 14¢ per lb. [1970]
 12¢ per lb. [1971]
 10¢ per lb. [1972]

 \* \* \* \* \* \* \*

772.65 Hose, pipe, and tubing, all the foregoing not specially provided for, of rubber or plastics, suitable for conducting gases or liquids, with or without attached fittings_ 6.5% ad val. [1969]
 5.5% ad val. [1970]

Claimed under:
 Schedule 8:
 Schedule 8 headnote:
 1. The provisions of this schedule are not subject to the rule of relative specificity in headnote 10(c) of the General Headnotes and Rules of Interpretation, and, except as provided in headnote 3 to part 1 of this schedule, any article which is described in any provision in this schedule is classifiable in said provision if the conditions and requirements thereof and of any applicable regulations are met.

 \* \* \* \* \* \* \*

 Part 4:

 \* \* \* \* \* \* \*

854.20 Cellulosic plastics materials imported for use in artificial kidney machines or apparatus by a hospital or by a patient pursuant to prescription of a physician__ Free

The following pertinent regulations were issued by the Secretary of the Treasury (T.D. 71–139, 36 F.R. 10726, June 2, 1971, effective July 2, 1971):

### RATE OF DUTY DEPENDENT UPON ACTUAL USE

*10.131 Circumstances in which applicable.*—The provisions of sections 10.131 through 10.139 are applicable in those circumstances in which the rate of duty applicable to merchandise is dependent upon actual use, unless there is a specific provision in this part or Part 54 of this chapter which governs the treatment of the merchandise. * * *

\* \* \* \* \* \* \*

*10.133 Conditions required to be met.*—When the tariff classification of any article is controlled by its actual use in the United States, three conditions must be met in order to qualify for free entry or a lower rate of duty unless the language of the particular item of the Tariff Schedules of the United States applicable to the merchandise specifies other conditions. The conditions are that:

(*a*) Such use is intended at the time of importation.

(*b*) The article is so used.

(*c*) Proof of use is furnished within 3 years after the date the article is entered or withdrawn from warehouse for consumption.

*10.134 Declaration of intent.*—A showing of intent by the importer as to the actual use of imported merchandise shall be made by filing with the entry for consumption or for warehouse a declaration as to the intended use of the merchandise, or by entering the proper item number of an actual use provision of the Tariff schedules of the United States and the reduced or free rate of duty on the entry form. Entry made under an actual use provision of the Tariff Schedules of the United States may be construed as a declaration that the merchandise is entered to be used for the purpose stated in the schedules, provided the district director is satisfied the merchandise will be so used. However, the district director shall require a written declaration to be filed if he is not satisfied that merchandise entered under an actual use provision will be used for the purposes stated in the schedules.

\* \* \* \* \* \* \*

*10.136 Suspension of liquidation.*—Liquidation of an entry covering merchandise for which a declaration of intent has been made pursuant to §10.134 and any required deposit of duties made, shall be suspended until proof of use is furnished or the 3-year period allowed for production thereof has expired.

\* \* \* \* \* \* \*

*10.138 Proof of use.*—Within 3 years from the date of entry or withdrawal from warehouse for consumption, the importer shall submit in duplicate in support of his claim for free entry or for a reduced rate of duty a certificate executed by (1) the superintendent or manager of the manufacturing plant, or (2) the individual end-user or other person having knowledge of the actual use of the imported article. The certificate shall include a description of the

processing in sufficient detail to show that the use contemplated by the law has actually taken place. A blanket certificate covering all purchases of a given type of merchandise from a particular importer during a given period, or all such purchases with specified exceptions, may be accepted for this purpose, provided the importer shall furnish a statement showing in detail, in such manner as to be readily identified with each entry, the merchandise which he sold to such manufacturer or end-user during such period.

\* \* \* \* \* \* \*

The cases have been submitted for decision on the basis of the following stipulation:

## STIPULATION

IT IS HEREBY STIPULATED AND AGREED by and between counsel for the parties, subject to approval of this Court, as follows:

1. The actions enumerated on the attached Schedule of Cases may be consolidated for purposes of submission, decision and judgment.

2. These actions were commenced within the time provided by law, and all liquidated duties have been paid.

3. The imported merchandise consists of plastic tubing, known as "Cuprophan" tubing, and was entered at the port of Chicago, Illinois, on the dates shown on the attached Schedule of Cases. Each of the entries was liquidated by the District Director on the date shown on the Schedule.

4. The tubing was classified and assessed with duty by the District Director under either TSUS item 772.65 as tubing, n.s.p.f., of plastics, suitable for conducting liquids or gases, or under TSUS item 771.35 as other seamless tubing of cellulosic plastics materials.

5. Plaintiff contends that the tubing is properly classifiable under TSUS item 854.20, free of duty, as cellulosic plastics materials imported for use in artificial kidney machines or apparatus by a hospital or a patient, pursuant to a physician's prescription.

6. The tubing was imported by plaintiff, J. E. Bernard & Co., Inc., as customs broker for Travenol Laboratories, Inc. With respect to the cases on the attached Schedule the parties agree that:

(a) Entries marked "A" on the attached Schedule were entered by plaintiff at the free rate of duty.

(b) Entries marked "B" on the attached Schedule were liquidated by Customs as entered by plaintiff, under the provisions recited in paragraph 4. However, notations by plaintiff on the entry papers indicate that a claim of free entry under "TSUS 854.0000" might be made.

(c) Entries marked "C" were liquidated by Customs as entered by plaintiff, under the provisions recited in paragraph 4. However, commercial invoices accompanying the entry papers state that the merchandise is for kidney machines in accordance with the duty free provisions of "854.00, TSUS."

(d) Entries marked "D" were liquidated as entered by plaintiff. There are no notations on either the entry papers or the accompanying commercial invoices indicating that duty free entry was intended.

(e) Entries marked "E" were liquidated as entered by plaintiff. There are no notations on either the entry papers or the accompanying commercial invoices that duty-free entry was intended. However, a rejected entry attached to the entry papers indicated plaintiff's attempt to have merchandise entered under the provisions listed in subparagraph (a).

(f) Entries marked "F" were liquidated as entered by plaintiff. There are no notations on either the entry papers or the accompanying commercial invoices indicating that duty free entry was intended. However, an internal Customs memorandum from the Assistant District Director of Chicago to the Deputy Assistant Regional Commissioner (C & V) states:

"Issue classification: 854.20/Free vs. 771.35/14¢ 772.65/5 1/2%."

Plaintiff contends that this memorandum indicates Customs' awareness of the classification issue involved in the entries marked "F." Defendant denies that contention.

7. A kidney coil is a hemodialysis device used to treat patients suffering from acute renal failure.

8. A kidney coil is a "prescription device" within the meaning of the Federal Food, Drug and Cosmetic Act (21 U.S.C. 301, *et seq.*) and regulations of the Food and Drug Administration promulgated thereunder (21 C.F.R. 1.1, *et seq.*), which law and regulations restrict the distribution of such devices in the United States to hospitals or to patients pursuant to a prescription of a physician.

9. The imported merchandise, Cuprophan tubing, was manufactured into kidney coils in the United States.

10. On March 17, 1971, a Customs Ruling was promulgated, which is attached as Exhibit 1. On July 2, 1971, §§ 10.134, 10.136 and 10.138 of the Customs Regulations became effective.

11. On October 17, 1974, defendant's counsel advised plaintiff's counsel that the Government had reviewed its interpretation of item 854.20 and changed its position with respect to the issue of the proper tariff classification of merchandise described in paragraph 4 of Exhibit 1. Thereafter, the Government agreed that importations by plaintiff of such tubing would qualify for free entry under item 854.20, provided declarations of intent and certificates of actual use were filed as required by General Headnote 10(e)(ii), TSUS.

12. On February 11, 1975, Travenol filed Certificates of Actual Use of the Tubing with the District Director, copies of which are attached as Exhibit 2, relating to all the subject entry numbers with the exception of entry 201226 of Civil Action 72-2-00446 and entry 227220 of Civil Action 72-8-01856.[1]

13. With the exception of entries 226668, 227220, and 228713 of Case No. 72-8-01856, all of the entries covered by the Certificates of Actual Use were made more than three years prior to February 11, 1975.

\* \* \* \* \* \* \*

[1] A review of the entry papers shows that there is no entry 227220 involved in the actions before us. There is, however, an entry number 227200 for which a timely certificate of actual use was filed. It appears that entry 227200 was erroneously listed on the Schedule of Cases, attached to the stipulation, as 227220. This discrepancy explains the inconsistency between paragraphs 12 and 13 with respect to entry 227220.

The 24 consolidated cases here involved cover 81 entries and all these entries were liquidated as entered. However, protests were filed on 19 entries which were liquidated on or before September 4, 1970 claiming that the imported tubing was properly classifiable as seamless tubing of cellulosic acetate materials under item 771.20 rather than under item 772.65 (which covers tubing of plastics, suitable for conducting liquids or gases) on the ground that item 771.20 is more specific than item 772.65. The claims for duty-free entry under item 854.20 were interposed subsequent to the liquidation of these 19 entries and thus after September 4, 1970. In addition protests and complaints were filed on the remaining 62 entries claiming that the imported tubing should be entered duty free under item 854.20 on the basis that such tubing was solely used with artificial kidney machines.

The claims for duty-free entry under item 854.20 were denied pursuant to a customs ruling embodied in a letter from the Director, Division of Tariff Classification Rulings of the Bureau of Customs, dated March 17, 1971 (stipulation, par. 10, exhibit 1), which reads in part as follows:

> There is no requirement that materials entered under item 854.20, TSUS, be imported directly by a hospital or patient. The prohibition against commercial use is not violated when, on prior order, a distributor or other middleman orders from abroad and imports the materials as agent of the hospital or patient, and so states on the entry papers. The fact that the middleman or distributor is remunerated for his services and the material in these circumstances does not render the transaction commercial.

> Free entry for cellulosic plastics materials under item 854.20, TSUS, will be denied when the materials are imported by a distributor or other middleman as a "shelf" item, in hopes of later sales. The fact that such hoped for "later sales" may be sales to hospitals or their patients would not alter the dutiable status of shelf cellulosic plastics materials.

On October 17, 1974, government counsel advised plaintiff's counsel that the government had reviewed its interpretation of item 854.20 and changed its position with respect to the issue of the proper tariff classification of cellulosic plastics materials imported by a distributor or other middleman as a "shelf" item. Thereafter, the government agreed that importations by plaintiff of such tubing would qualify for free entry under item 854.20, provided declarations of intent and certificates of actual use were filed as required by general headnote 10(e)(ii), TSUS.

On February 11, 1975, Travenol filed certificates of actual use of the tubing with the district director covering 80 of the 81 entries. (see note 1, *supra*). With the exception of three entries, all of the.

entries covered by the certificates of actual use were made more than three years prior to February 11, 1975.

Against this background, the question is whether under the circumstances of the present cases plaintiff is entitled to duty-free classification under item 854.20 notwithstanding that it failed to comply with statutory and regulatory conditions precedent for such classification.

General interpretative rule 10(e)(ii) and customs regulation 10.133 make it clear that an actual use provision such as item 854.20 is satisfied only (1) if such use is intended at the time of importation; (2) if the article is so used; and (3) if proof thereof is furnished within three years after the date the article has been entered.

Item 854.20 requires that imported cellulosic plastics materials be used in artificial kidney machines or apparatus by a hospital or by a patient pursuant to a prescription by a physician. The actual use of the merchandise at bar, i.e., plastic tubing known as cuprophan tubing, is not in dispute since the parties have stipulated that the tubing was manufactured in the United States into kidney coils which are hemodialysis devices used to treat patients suffering from acute renal failure. But even though a product is actually used in the manner contemplated by an actual use provision, it may be classified under that provision only if the mandate of general interpretative rule 10(e)(ii) has been complied with. *Czarnikow-Rionda Company* v. *United States*, 66 Cust. Ct. 431, C.D. 4229, 328 F. Supp. 487 (1971), *aff'd*, 60 CCPA 6, C.A.D. 1071, 468 F. 2d 211 (1972). Thus, the timely filing of certificates of actual use is as much a requirement for classification under an actual use provision as proof of the actual use itself.

It is in this context that we consider first the requirement of rule 10(e)(ii) that certificates of proof of actual use must be furnished three years from the date of entry. And, on this score, it is important to note that with the exception of three entries plaintiff has not complied with this three-year requirement. However, plaintiff argues that it was not required to file certificates of actual use within three years from the date of entry on the ground that the government assertedly waived this requirement. According to plaintiff, this waiver occurred when Customs (1) allegedly refused to recognize the importer's status as a proper party to seek duty-free entry; and (2) failed to suspend liquidation of the entries.

With regard to the first aspect of this argument, namely that Customs allegedly refused to recognize the importer's status as a proper party to seek duty-free entry, plaintiff relies on the customs ruling of March 17, 1971. The import of that ruling is that in order to qualify for free entry (1) the article does not have to be imported directly by a hospital or patient; (2) that duty-free entry will be allowed when,

on prior order, a distributor or other middleman orders from abroad and imports the materials as agent of the hospital or patient and so states on the entry papers; and (3) that free entry will be denied when the materials are imported by a distributor or other middleman as a "shelf" item, in hopes of later sales. In view of this ruling, plaintiff relying heavily on *Tacey* v. *Irwin*, 85 U.S. 549 (1873) insists that filing certificates of actual use would have been a vain and useless act and the law does not require the performance of a vain and useless act.

A similar argument was rejected in *Border Brokerage Co. et al.* v. *United States*, 19 Cust. Ct. 55, C.D. 1067 (1947), *aff'd*, 36 CCPA 83, C.A.D. 402 (1949). In that case the court held that the obligation of importers to comply with regulations prescribed by the Secretary of the Treasury under a statute requiring the filing of affidavits of intended use and of actual use were not dispensed with because of an additional regulation—later held invalid—which would have resulted in rejection of the importer's claim. In other words, compliance with the regulations requiring the filing of affidavits was necessary even though the collector's office was rejecting the claims. The court in *Border Brokerage* distinguished *Tacey* v. *Irwin* as follows (19 Cust. Ct. at 58):

> Plaintiffs claim, however, that the law does not require the performance of useless acts, citing *Tacey* v. *Irwin*, 85 U.S. 549. In that case, tax commissioners had issued a general rule refusing to receive taxes unless tendered by the owner of the property in person. After the premises in question were advertised for sale, a relative of the owner went to the office of the commissioners to see about the payment of the tax but did not make a formal offer of payment. It was held that the owner had a right to pay in person or through any one not disavowed by him; that this right had been denied by the rule adopted by the commissioners; that the general rule had the effect of a refusal to accept a tender made by some one other than the owners; and that because of such rule a regular tender was excused.
>
> That case can be distinguished from the instant case in that the very regulation which was not complied with was declared invalid and the payment itself would have been refused, if tendered. In the instant case, the regulations requiring the filing of affidavits of use are reasonable and valid and there is no evidence that the collector would have refused to accept those affidavits, if tendered.

Here not only were the customs regulations requiring the filing of certificates of actual use reasonable, they were statutorily mandated. Moreover, there is no evidence whatever that Customs would have refused plaintiff's tender of such certificates considering especially that plaintiff's standing as a proper party is without dispute. Indeed, this is emphasized by Customs' acceptance of later certificates of actual use filed by plaintiff notwithstanding that they were in fact untimely.

To paraphrase what the court said in *Border Brokerage* (19 Cust. Ct. at 61): It cannot be said that the filing of the certificates of actual use is an entirely useless act. Although Customs ruled on March 17, 1971 that the merchandise herein was not entitled to free entry under item 854.20, Customs had 90 days after the filing of a protest to the liquidations in which to review its ruling. Had the ruling been rescinded during that period, Customs would have reconsidered its decision; but without any certificates of actual use before it, Customs would not have known whether the merchandise had been used as coils in kidney machines and so could not have changed its ruling. See also, e.g., *Harris & Co. et al.* v. *United States*, 6 Ct. Cust. Appls. 420, T.D. 35978 (1915); *S. Schapiro & Sons* v. *United States*, 29 CCPA 235, C.A.D. 196 (1942); *Pink Supply Co.* v. *United States*, 32 CCPA 48, C.A.D. 284 (1944).

What is more, even assuming *arguendo* that Customs knew the imported tubing had only one possible use in the United States, i.e., for kidney machines, plaintiff still would not have been relieved from the necessity of complying with the conditions mandated by general interpretative rule 10(e)(ii). This is made clear in *Maple Leaf Petroleum, Ltd.* v. *United States*, 25 CCPA 5, T.D. 48976 (1937) where it was held that the importer was not excused from filing documents required by the regulations, although the collector knew all the facts in the case. As the court in *Maple Leaf* stated (*id.* at 8–9):

> Appellant's argument to the effect that the collector knew all the facts, and that for this reason the establishment of the identity of the merchandise exported and imported in accordance with the regulations was therefore unimportant, is devoid of merit. It has long been the sound policy of our Government that when such grants and privileges as those involved here were allowed in customs matters, they were granted only upon the condition that there should be a compliance with regulations to be prescribed by the Secretary of the Treasury. * * *

For the foregoing reasons, it must be concluded that the customs ruling of March 17, 1971 did not excuse plaintiff from filing timely certificates of actual use.

The second aspect of plaintiff's argument is that Customs waived the filing of certificates of actual use because it failed to withhold liquidation for a three-year period to determine whether the items imported by plaintiff were in fact delivered to hospitals or patients for use in kidney machines.

Customs regulation 10.136 deals with suspension of liquidation for merchandise for which a declaration of intent has been made pursuant to customs regulation 10.134. These regulations became effective July 2, 1971 on which date 68 of the 81 entries involved here had

already been entered and thus only 13 of the entries could have been eligible for suspended liquidations under 10.136.

With respect to the 68 entries made before July 2, 1971, customs regulation 25.18(b) (19 C.F.R. § 25.18(b) (1970)) was the precursor regulation to regulation 10.134. It provided as follows:

(b) In cases where the regulations relating to certain classes of merchandise * * * prescribe a 3-year period within which proof must be produced of the use or disposition of the merchandise in, or its exportation from, the United States, and such proof is not furnished within the prescribed period, the collector may, upon the written application of the importer, extend the 3-year period for further periods of 1 year each, but not to exceed 5 years from the date of entry.

Under this regulation, plaintiff had three years within which to file proof of use—which it did not do with respect to the 68 entries. Nor did plaintiff file a written application—or any application for that matter—requesting an extension of time for filing such proof. In these circumstances, it is manifest that as to these 68 entries plaintiff has failed to comply with the applicable regulation.

We turn next to the 13 entries which were made after July 2, 1971— the date on which customs regulation 10.136 became effective. As previously noted, this regulation reads as follows:

10.136 Suspension of liquidation.—Liquidation of an entry covering merchandise for which a declaration of intent has been made pursuant to § 10.134 and any required deposit of duties made, shall be suspended until proof of use is furnished or the 3-year period allowed for production thereof has expired.

Also, as previously noted, customs regulation 10.134 covering declarations of intent reads as follows:

10.134 Declaration of intent.—A showing of intent by the importer as to actual use of imported merchandise shall be made by filing with the entry for consumption or for warehouse a declaration as to the intended use of the merchandise, or by entering the proper item number of an actual use provision of the Tariff Schedules of the United States and the reduced or free rate of duty on the entry form. Entry made under an actual use provision of the Tariff Schedules of the United States may be construed as a declaration that the merchandise is entered to be used for the purpose stated in the schedules, provided the district director is satisfied the merchandise will be so used. However, the district director shall require a written declaration to be filed if he is not satisfied that merchandise entered under an actual use provision will be used for the purposes stated in the schedules. [Emphasis added.]

With respect to regulations 10.136 and 10.134, the parties have stipulated, as follows, as to the 13 entries entered after July 2, 1971 (the effective date of these regulations): (1) that the entries marked "C" have accompanying commercial invoices which state that the

merchandise is for kidney machines in accordance with the duty-free provisions of item 854.20; (2) that the entries marked "D" have no notations on the entry papers or the accompanying commercial invoices indicating duty-free entry was intended; and (3) that for entries marked "E" there are no notations on either entry papers or the accompanying commercial invoices that duty-free entry was intended but that a rejected entry attached to the entry papers indicated plaintiff's attempt to have the merchandise entered under item 854.20.

It is to be further observed that with regard to the 13 entries in question, 11 came under the category marked "C"; one under "D"; and one under "E."

Considering first the entries marked "C," plaintiff neither entered the merchandise covered by these entries under item 854.20 nor filed a separate declaration of intent. And nowhere did the *importer* indicate that either it or the commercial purchaser intended that the merchandise be used in the way specified by item 854.20. Regulation 10.134 clearly states that the showing of intent should be made by the "importer," yet the only intent that was recorded was on the commercial invoices by the exporter who had no control of the merchandise at or after the time of entry. Since no declaration of intent as required by regulation 10.134 was filed, Customs was not obligated to withhold liquidation.

With regard to the entry marked "D," the parties have stipulated that no notations appear anywhere indicating that the importer intended to have the merchandise entered duty free. Therefore, Customs was correct in not withholding liquidation and in classifying the merchandise as entered.

Finally, the entry marked "E" does have a rejected entry attached to the entry papers indicating plaintiff's intent to have the merchandise entered duty free under item 854.20. However, regulation 10.134 explicitly states that the district director shall require a written declaration of intent to be filed if he is not satisfied that merchandise entered under an actual use provision will be used for the purposes stated in the tariff schedules. Since the district director apparently rejected the entry under item 854.20, it was incumbent upon plaintiff to file a written declaration of intent pursuant to regulation 10.134. And since plaintiff failed to file such a declaration, Customs again was not required to suspend liquidation.

Headnote 1, Schedule 8, TSUS, makes compliance with "any applicable regulations" a prerequisite for classification within that schedule. In light of the fact that plaintiff failed to file declarations of intent as required by regulation 10.134 it is precluded by headnote 1 from obtaining classification for the 13 entries under the duty-free provisions of item 854.20 which is a schedule 8 item.

Apart from the foregoing, regulation 10.136 requires suspension for which a declaration of intent has been made "until proof of use is furnished *or the 3-year period allowed for production thereof has expired.*" (Emphasis added.) For 78 of the 81 entries, proof of actual use was *not* furnished within the requisite three-year period. Thus, the regulation itself on which plaintiff's waiver argument is predicated is inapplicable since suspension in any case could not extend beyond the three-year period.

Deserving mention is yet another facet of suspension of liquidation which pertains to the 78 entries where timely certificates of use were not filed. For even assuming that liquidation of these entries should have been suspended, the instant regulations could not lawfully relieve plaintiff of its statutory obligations under general interpretative rule 10(e)(ii). Relevant in this connection is the *Czarnikow* case, *supra*, where plaintiff argued that customs regulations relating to the release of merchandise without additional duties (66 Cust. Ct. at 437, note 6) modified the requirements of rule 10(e)(ii). The appellate court rejected this contention (60 CCPA at 9):

> Although appellant cites various Customs Regulations in arguing against Rule 10(e)(ii) as a mandatory requirement for the filing of proof of further processing within 3 years of the time of importation we find no provision within the tariff statute itself which might modify the responsibility placed on the importer. *Customs Regulations can not be elevated to the level of statutory authority. Moreover, had the importer furnished timely proof, it would have avoided the additional duty. We see no inequity in holding the importer to the mandatory limit.* [Emphasis added.]

In *Czarnikow*, the government had granted plaintiff an extension of time to file certificates of actual use (60 CCPA 9, note 3). The appellate court held that such purported extension was ineffective, since Customs was without authority to extend the three-year statutory limit. *A fortiori* in the present cases where there is no indication whatever in the record that Customs even contemplated the granting of an extension to plaintiff, there can be no estoppel against the government. In short, plaintiff cannot prevail because it has not complied with the requirements of the statute which set a three-year time limit. And this statutory limitation was neither extended by Customs nor could it be extended. *Cf.* customs regulation 25.18(b) (19 C.F.R. § 25.18(b) (1970)), *supra*.

Remaining for consideration are the three entries for which timely certificates of actual use have been filed. These entries which are in the category marked "C" have (as previously noted) accompanying commercial invoices which state that the merchandise is for kidney machines in accordance with the duty-free provisions of item 854.20. As we have already seen in discussing the suspension of liquidation

question, this statement on the commercial invoices by the exporter did not comply with the declaration of intent requirements of regulation 10.134 and for that reason alone plaintiff may not prevail as to these three entries.

Aside from this, there is nothing in the stipulation submitted by the parties which shows that the plaintiff at the time of importation intended the imported tubing to be used in the manner prescribed by item 854.20. In lieu of factual evidence, plaintiff contends that the merchandise in question was classified by import specialists who are "usually well informed as to the nature of the goods. they are inspecting" and to whom some knowledge of commerce is attributed. Based on this imputed knowledge and the continued averments of plaintiff (by protest, for example) that the merchandise was to be used in the manufacture of artificial kidney coils, plaintiff *assumes* that its intent was made clear to the customs officials in Chicago. Plaintiff also points out that under the stipulation the only possible legal market for kidney coils within the Federal Food, Drug and Cosmetic Act was to hospitals and patients with a prescription..

With regard to these arguments, the court cannot decide this case upon the assumption that the import specialists were imputed with the knowledge of the importer's intent as to the use of the imported cellulosic plastic cuprophan tubing. For one thing, the fact that Customs consistently classified the merchandise as entered under items 772.65 or 771.35 and consistently denied the protests claiming duty-free entry under item 854.20 leads to the opposite conclusion. At the very least, such action would refute the imputed knowledge plaintiff ascribes to Customs as to the intended use of the importations.

Furthermore, the remarks of Congressman Mills, Chairman of the Committee on Ways and Means, before the U.S. House of Representatives on September 30, 1968, 114 Cong. Rec. 28694-5 (1968), make it clear that cellulosic plastics materials (such as imported here) have *various* uses and that only importations for use in kidney machines by hospitals or patients would be duty free. Thus Congressman Mills stated (*id.* at 28695):

> The committee noted, however, that cellulosic plastics materials have many uses and, therefore, has amended the bill, as introduced, to provide duty-free entry only when such materials are imported for use in artificial kidney machines or apparatus by a hospital or by a patient pursuant to prescription of a physician.

Under such circumstances, it would hardly be evident to Customs—absent a declaration of intent by the importer—that the imported cellulosic plastics tubing was intended for use solely in kidney machines.

For all the foregoing reasons, the 24 consolidated cases are dismissed and judgment will be entered accordingly.